ON MOTION FOR REHEARING

WOLF, J.
We deny appellant’s motion for rehearing, but we withdraw this court’s previous opinion and substitute the corrected opinion to correct a sentence, which appears on page 7 of the original opinion. The corrected sentence reads as follows:
Unlike Iowa, Florida does allow a business to subtract its foreign tax credit dividends from its income calculation while limiting the credit’s subtraction’s use to the year in which it-is those dividends are received, rather than allowing the credit subtraction to be carried into the next year, as the federal government allows.

CORRECTED OPINION

The issue before this court is whether Florida’s limitation of net operating loss carryovers to federal net losses under section 172 of the Internal Revenue Code (I.R.C.) improperly discriminates against foreign corporate dividends. We determine it does not and affirm the decision of the Department of Revenue (Department).
This case involves no issues of material fact. The entire dispute rests on an interpretation of the Foreign Commerce Clause as it applies to discrimination between domestic and foreign subsidiaries affected by Florida’s taxing scheme. Appellant manufactures and markets its products on a national and worldwide basis. Because of its foreign business dealings, appellant has several foreign subsidiary companies which contribute significantly to its sales and net income and pay large amounts of foreign dividends back to it.[1]
*1214 Foreign countries many times tax the income of the foreign subsidiary paying the dividends; thus, the United States allows for companies to offset those taxes in one of two ways. The companies may either (1) take a foreign tax credit based on foreign taxes paid to foreign governments by the foreign subsidiaries, using a percentage of the dividends paid by those subsidiaries to the domestic parent corporation pursuant to sections 901 and 902 of the I.R.C., or (2) deduct the foreign taxes paid from their federal taxable income pursuant to section 164 of the I.R.C. This is to keep money received from the foreign subsidiaries from being taxed twice.
However, while similar double taxation may occur domestically, the federal government chooses to offer only one method to offset domestic taxes paid to the individual states. Namely, the federal government allows corporations to deduct a portion of domestic dividends paid depending on their qualifying status, as those dividends are likely generated from subsidiaries whose income has already been taxed locally, but it does not offer a domestic tax credit. If a party chooses to deduct the foreign tax amount from its taxable income, that deduction is treated similarly to the deduction of dividends from domestic corporations. Specifically, both are deducted and may result in a net operating loss at the federal level. The federal government, as well as Florida, allows these operating losses to be carried over to subsequent years.
Corporations doing business in Florida are subject to both a federal corporate income tax and a Florida corporate income tax. If a corporation chooses the federal deduction method, Florida uses the federal taxable income as its starting point and treats carryover losses in a similar fashion to the federal system. See § 220.13, Fla. Stat. (2004).
Section 220.13(1), Florida Statutes (2004), discusses subtractions to the calculated corporate income and states, in pertinent part:
(b) Subtractions.—
1. There shall be subtracted from such taxable income:
a. The net operating loss deduction allowable for federal income tax purposes under s. 172 of the Internal Revenue Code for the taxable year,
b. The net capital loss allowable for federal income tax purposes under s. 1212 of the Internal Revenue Code for the taxable year,
[[Image here]]
However, a net operating loss and a capital loss shall never be carried back as a deduction to a prior taxable year, but all deductions attributable to such losses shall be deemed net operating loss carryovers and capital loss carryovers, respectively, and treated in the same manner, to the same extent, and for the same time periods as are prescribed for such carryovers in ss. 172 and 1212, respectively, of the Internal Revenue Code.
2. There shall be subtracted from such taxable income any amount to the extent included therein the following:
a. Dividends treated as received from sources without the United States, as determined under s. 862 of the Internal Revenue Code.
b. All amounts included in taxable income under s.78 or s. 951 of the Internal Revenue Code.[2]
(Emphasis added).
Appellant asserts that, because losses created by domestic dividend deduc *1215 tions can always be carried over while the foreign tax credit, calculated through the payment of foreign dividends, cannot be carried over, discrimination between domestic and foreign dividends necessarily results. This argument specifically relies on two federal constitutional provisions. First, the Federal Commerce Clause (Article I, Section 8 of the United States Constitution) provides that Congress shall have the power “[t]o regulate commerce with foreign Nations, and among the several States, and with the Indian Tribes.” Further, the Equal Protection Clause (Amendment XIV, Section 1) states that “[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws.”
The United States Supreme Court has read these provisions collectively to prohibit a state taxing statute from discriminating between foreign and domestic commerce and has noted the following relevant factors to be considered when addressing a Foreign Commerce Clause claim:
1. whether the tax is applied to an activity with a substantial nexus with the taxing state;
2. whether the tax is fairly apportioned;
3. whether the tax is non-discriminatory;
4. whether the tax is fairly related to the services provided;
5. whether the tax creates a substantial risk of international multiple taxation; and
6. whether the tax prevents the federal government from speaking with one voice when regulating commercial relations with foreign governments.
See Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977) (considering and adopting factors 1-4); Japan Line, Ltd. v. County of Los Angeles, 441 U.S. 434, 451, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979) (considering and adopting factors 5-6).
In the instant case, appellant relies on the “discrimination” factor of the above stated test. In Kraft General Foods, Inc. v. Iowa Department of Revenue & Finance, 505 U.S. 71, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992), the United States Supreme Court applied the aforementioned “discrimination” prong to a tax disparity between foreign and domestic dividend deductions in Iowa. The Supreme Court held that, in order to invalidate a state statute, the statute must facially discriminate against foreign commerce. Id. at 75, 112 S.Ct. 2365. The appellant in Kraft challenged the Iowa income tax scheme because it allowed a deduction for dividends from domestic subsidiaries by adopting the federal taxable income as its starting point, without allowing a deduction for dividends received from foreign subsidiaries. Id. at 74, 112 S.Ct. 2365. Additionally, Iowa did not allow corporations to use their federal foreign tax credit to offset taxes owed to the state. Id.
The Supreme Court found that Iowa’s tax scheme impermissibly taxed the dividends of a foreign subsidiary in relation to the dividends of a domestic subsidiary and that this disparate treatment violated the Foreign Commerce Clause. Id. at 81, 112 S.Ct. 2365. Specifically, the Supreme Court held that the differing treatment of the two types of subsidiaries facially discriminated against foreign commerce by allowing tax deductions for domestic divi *1216 dends and prohibiting deductions for foreign dividends. Id. In so holding, the Supreme Court reiterated the holding of Japan Line, stating that “the constitutional prohibition against state taxation of foreign commerce is broader than the protection afforded to interstate commerce.” Id. at 79, 112 S.Ct. 2365 (citing Japan Line, 441 U.S. at 451, 99 S.Ct. 1813). While noting that a state need not mimic the federal income calculation of the federal government, the Supreme Court prohibited states from adopting a statutory calculation that facially discriminated between domestic and foreign dividend credits. Id.
Kraft differs from this case. Unlike Iowa, Florida does allow a business to subtract its foreign dividends from its income calculation while limiting the subtraction’s use to the year in which those dividends are received, rather than allowing the subtraction to be carried into the next year, as the federal government allows. Additionally, unlike Iowa, Florida allows any net losses resulting from a foreign tax deduction to be carried over into future years.
Appellant lodges a facial challenge to the Florida taxing scheme. In considering whether facial discrimination exists in a taxing scheme, courts must look to the treatment applied to similarly situated taxpayers. Kraft, 505 U.S. at 81 n. 23, 112 S.Ct. 2365. In the instant case, because the alleged discrimination arises in Florida’s treatment of domestic versus foreign dividends for tax purposes, this court compares a corporation who does business in Florida and receives dividends from subsidiaries located in other states to a corporation who does business in Florida and receives dividends from foreign subsidiaries.
The Department argues that appellant’s challenge must be as-applied instead of facial and that no discrimination exists between “similarly situated” taxpayers because, if appellant wanted the dividends to be treated equally, that option existed based on both the Florida and the federal income schemes. Notably, the Department agrees that the Florida subtraction, under the second foreign tax credit scenario, cannot be used to create a net operating “loss” carryover in situations where a taxpayer has a positive federal income. Heftier Constr. v. Fla. Dep’t of Revenue, 438 So.2d 139 (Fla. 3d DCA 1983).[3] Notwith *1217 standing, the Department asserts that the option created through Florida’s piggybacking of section 172 of the I.R.C., which allows a federal net operating loss resulting from deductions of foreign taxes to be carried forward for future loss in Florida, treats foreign and domestic tax deductions in a similar manner; thus, no disparate treatment exists.
A review of the I.R.C. supports the Department’s assertions. Section 243(a)-(b) of the I.R.C. authorizes a corporation to take a tax deduction on 70-100% of the dividends paid by a domestic corporation, depending on its qualifying status.[4] This deduction is necessarily deducted and included in the corporation’s federal income, Florida’s starting point for tax calculation. This appears to be the only option for a corporation to deduct domestic taxes paid to state taxing authorities.
Unlike the domestic deduction, the federal government offers an option to deduct or credit taxes paid to foreign subsidiaries. First, section 901 of the I.R.C. authorizes a corporation to receive a foreign tax credit reimbursing it for all foreign taxes paid by subsidiaries based on the amount of dividends paid to the corporation by the foreign subsidiary and the ownership interest of the corporation (dividends paid x ownership percentage = credit given). Appellant chose to take this credit.
However, a second option existed for appellant. Section 164 of the I.R.C. allows a corporation to deduct taxes paid to foreign sources equal to the amount of that corporation’s ownership share of the subsidiary (foreign taxes paid x ownership share = deduction given). In addition, section 245(b) of the I.R.C. authorizes a qualifying corporation to take a foreign dividend deduction.[5] Thus, appellant had an option to take a deduction based on the foreign taxes paid by its subsidiaries (and possibly a deduction based on foreign dividends received) but chose to take the credit based on taxes paid by those subsidiaries paying appellant dividends. This option was not available as to the domestic taxes paid, which offers double taxation relief only through a deduction of domestic dividends (parent corporations can deduct 70-100% of dividends paid). In the instant case, if appellant chose to deduct the foreign taxes, rather than taking a credit based on the dividends paid and income of the subsidiaries, and that deduction resulted in a net operating loss carryover pursuant to section 172 of the I.R.C., then that carryover would be considered in Florida’s federal income calculation similarly to the carryover allowed for net operating losses based on other sources of income as well as the domestic dividend deduction.
*1218 This court recognizes that in Dart Industries, Inc. v. Clark, 657 A.2d 1062 (R.I.1995), the Rhode Island Supreme Court invalidated a state taxation statute as vio-lative of the Foreign Commerce Clause, even after considering the foreign deduction versus credit option. Rhode Island’s state taxation scheme, like Florida’s, piggybacked the federal taxable income calculation, necessarily excluding domestic dividend income. However, unlike Florida’s statute, Rhode Island’s statute prohibited the subtraction of the foreign tax credit from the calculated income. Moreover, unlike Florida, Rhode Island did not allow for a subtraction of all foreign-source dividends. In its analysis, the court considered the availability of the foreign tax deduction, which could be deducted from the federal and state taxable income, but discounted the deduction where the credit appeared to always be the most lucrative choice for a corporation. Id. at 1063-64. Namely, the court stated, in pertinent part:
Under the Internal Revenue Code a corporation receiving a domestic dividend from its subsidiaries is generally allowed to deduct all or a portion of that dividend from its taxable income. 26 U.S.C. §§ 241 and 243. A corporation receiving a foreign dividend is only allowed to claim a deduction for the foreign taxes that were paid by the foreign affiliate to earn the funds represented by that dividend. 26 U.S.C. § 164. Alternatively, if a domestic parent corporation, owning at least ten percent of the voting stock of a foreign corporation from which it received dividends during a calendar tax year, elects to include in income an amount equal to the foreign taxes that are deemed attributable to the foreign dividend, it can claim a credit against its own tax liability for those foreign taxes. 26 U.S.C. §§ 901, 902.
A corporation’s Rhode Island net income is defined as federal taxable income for years ending after December 31, 1984, and for prior years as federal gross income adjusted by a limited series of additions and subtractions. Section 44r-11-11. Pursuant to § 44-11-12 a corporation was and continues to be able to exclude from its Rhode Island net income “dividends received from the shares of stock of ... any corporation liable to a tax imposed by this chapter.” Since the tax imposed by chapter 11 of title 44 is on any corporation deriving income from Rhode Island, or engaging in activities for profit or gain in Rhode Island, the statute creates an exemption for dividends paid by corporations with a nexus to Rhode Island.
Additionally, because § 44-11-11 bases its definition of net income upon federal taxable income, net income for Rhode Island tax purposes will not include dividends paid by domestic corporations. Unlike its federal counterpart, § 44-11-11 does not allow a corporation receiving foreign dividend income to credit that income against its Rhode Island tax liability for any portion of the foreign taxes attributable to foreign dividend income. Furthermore, because the federal tax code provides for only a limited deduction with respect to such dividends, the federal tax credit is usually more valuable to the taxpayer. 26 U.S.C. §§ 901, 902; see Kraft, 505 U.S. at [74] n. 11, 112 S.Ct. at 2368 n. 11, 120 L.Ed.2d at 62 n. 11. Therefore, because the taxpayer invariably chooses the federal tax credit over the federal deduction and Rhode Island has no counterpart to the federal credit, foreign dividends are usually taxable as net income in Rhode Island.
Id. (emphasis added).
While this court recognizes the foreign tax credit may be the most lucrative option *1219 for a corporation based on the way in which it is organized, we disagree that the State of Florida must either allow that credit to offset taxes owed in later years or run afoul of the Foreign Commerce Clause.
The federal government has chosen to offer corporations receiving foreign dividends an option: they can either deduct foreign taxes paid based on their ownership percentage (and possibly deduct foreign dividends as well), or they can take a tax credit based on the amount of dividends paid by the subsidiary in relation to the taxes assessed by the foreign government on the income generating the dividends. Even if the federal tax credit creates a more lucrative option for a corporation, Florida is not required to piggyback that offer and provide appellant the greater opportunity of evading Florida income tax by using the foreign tax credit.
Unlike Rhode Island, Florida chooses to tax only its share of a corporation’s business dealings in the United States (expressly leaving foreign source income out of the taxation scheme pursuant to section 220.13(l)(b)2.a., Florida Statutes). Further, when taking the tax credit, appellant’s taxable Florida income is statutorily reduced by the “grossed up” amount of that credit pursuant to section 220.13(l)(b)2.b., Florida Statutes. However, despite all the opportunities available to appellant to offset its domestic and foreign dividend income in an equivalent manner, appellant is asking this court to reduce its Florida tax burden even further by allowing it to use foreign tax credits given for foreign business dealings having no nexus to Florida.
Florida’s offer of a deduction based on the taxes assessed against foreign and domestic subsidiaries is sufficient because it goes above and beyond treating the foreign and domestic subsidiaries in a similar manner; i.e., all foreign dividends are subtracted from the corporation’s income calculation while only some domestic dividends are deducted. Cf. Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 U.S. 564, 579-80, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997) (holding that states are free to impose generally applicable non-discriminatory tax burdens, as long as those burdens do not run afoul of the dormant commerce clause). Appellant’s position requires Florida to adopt the exact same credit carryover option as the federal government or be guilty of violating the Foreign Commerce Clause. However, Florida is not required to piggyback the federal tax scheme unless its refusal to do so ends in discrimination. Kraft, 505 U.S. at 82,112 S.Ct. 2365.
Further, in asserting the foreign tax credit is necessarily the more lucrative option, the Rhode Island Supreme Court looked to only section 164 of the I.R.C. and apparently failed to consider the additional deductions for foreign dividends authorized by section 245(b) of the I.R.C. Section 245(b)(2) of the I.R.C. authorizes domestic parent corporations to deduct foreign dividends if the parent corporation (1) owns, either directly or indirectly, “all of the outstanding stock” of the foreign subsidiary and (2) if the “gross income from all sources is effectively connected with the conduct of a trade or business within the United States.” Appellant could very well fall into these qualified categories.
However, because appellant chose to bring a facial challenge to the statute and further declined in its briefs or upon direct questioning at oral argument to discuss whether section 245(b) of the I.R.C. authorized this foreign dividend deduction, this court may not assume that the choice to take the foreign tax credit presented appellant’s most lucrative option. Section 245(b) of the I.R.C. allows a qualified cor *1220 poration to deduct foreign taxes paid and would further authorize that corporation to deduct foreign dividend income, making the deduction method a highly advantageous choice. We, therefore, disagree that the foreign tax credit will always present the most lucrative option for a corporation and cannot say the Florida statute per se facially discriminates against all domestic corporations doing business abroad through foreign subsidiaries.
In addition, the holding of Dart is easily distinguished from the present case because the appellant in Dart took issue with Rhode Island’s refusal to allow the foreign tax credit to be subtracted from a corporation’s income; however, here, appellant acknowledges that Florida allows a subtraction based on the foreign tax credit but takes his argument one step further than the appellant in Dart. Specifically, appellant asserts that the prohibition of a net loss carry over of losses resulting from the otherwise subtractable foreign tax credit amounts to discrimination and mandates reversal. Such an extension is not well reasoned in light of a corporation’s ability in Florida to (1) carryover all losses resulting from the foreign tax deduction and foreign dividend deduction options and (2) subtract all foreign source dividends pursuant to sections 862 and 78 of the I.R.C. § 220.13(1), Fla. Stat. (2004).
If a corporation is concerned about offsetting future Florida tax burdens, the corporation can consider Florida’s prohibition on foreign tax credit carryovers alongside all available foreign dividend deduction carryovers pursuant to section 245 of the I.R.C. and section 220.13(l)(b)2.b., Florida Statutes, in rendering either the foreign tax credit or the foreign tax deduction a better option at that time. For the foregoing reasons, we decline to extend the reasoning of Dart to Florida’s treatment of the foreign tax deduction versus the foreign tax credit option.
Despite the available options, appellant argues that disparate “carryover” treatment between domestic and foreign dividends results if Florida is allowed to limit the foreign tax credit carryover.
In Kraft, the United States Supreme Court expressly stated:
Like the ImporWExport Clause, the Foreign Commerce Clause recognizes that discriminatory treatment of foreign commerce may create problems, such as the potential for international retaliation, that concern the Nation as a whole. Id., at 450, 99 S.Ct., at 1822. So here, we think that a State’s preference for domestic commerce over foreign commerce is inconsistent with the Commerce Clause even if the State’s own economy is not a direct beneficiary of the discrimination.
[[Image here]]
Iowa and amicus United States also assert the stronger claim that Iowa’s tax system does not favor business activity in the United States generally over business activity abroad. If true, this would indeed suggest that the statute does not discriminate against foreign commerce.
[[Image here]]
But whatever the tax burdens imposed by the Federal Government or by other States, the fact remains that Iowa imposes a burden on foreign subsidiaries that it does not impose on domestic subsidiaries.
505 U.S. at 79-80, 112 S.Ct. 2365 (emphasis added).
The Kraft decision invalidated Iowa’s disparate treatment of foreign and domestic subsidiary dividends because that treatment resulted in the State’s preferential treatment of domestic subsidiaries. Id. at 82, 112 S.Ct. 2365. Thus, it is not a *1221 question of whether the dividends are treated disparately, but whether the statute favors domestic subsidiaries over foreign. If a statute favors the domestic, regardless of its intent, it will likely be invalidated as violative of the Foreign Commerce Clause. Id. If a statute’s application does not end in favoritism of one type of a subsidiary over another, then no violation should be found. Id. 79-80, 112 S.Ct. 2865. Because “similarly situated” corporations may (1) subtract all foreign source dividends from their Florida income calculation and (2) opt to receive a pre-income calculation deduction of taxes paid to foreign sources rather than a foreign tax credit calculated based on dividends paid, Florida’s federal income tax calculation as applied to “similarly situated” corporations opting for a foreign tax deduction over a credit does not treat domestic subsidiaries dissimilarly from foreign subsidiaries. All foreign dividends can be used to offset Florida’s income tax calculations, and, depending on the corporation’s ownership status of a domestic subsidiary, Florida may tax a domestic dividend where it would not tax a foreign one.
Appellant also relies on Emerson Electric Co. v. Tracy, 90 Ohio St.3d 157, 735 N.E.2d 445 (2000), for support of its proposition that Florida’s failure to allow carryovers resulting from the foreign tax credit violates the Foreign Commerce Clause. In Emerson, the Ohio Supreme Court invalidated a state statute based on the Foreign Commerce Clause because the statute only allowed a foreign dividends deduction of 85%. Id. at 446. However, unlike the Ohio statute, section 220.13(l)(b)l.a., Florida Statutes, allows a 100% deduction of foreign dividends as well as any foreign dividend credits; it merely limits the carryover of any foreign dividend credits. Further, this type of sweeping dividend deduction requirement for a foreign subsidiary could be only discriminatory in nature.
The sole decision of a court analyzing a similar statute is the decision of the Maryland Tax Court in Kraft General Foods, Inc. v. Comptroller of the Treasury, 2001 WL 699558 (Md.Tax June 8, 2001). In this case, the court considered a Foreign Commerce Clause challenge to section 10-304(1), Tax-General Annotated Code of Maryland (1998), which similarly adopted the federal taxable income as its starting point and then allowed adjustments to that income based on foreign dividend credits, but disallowed any carryover resulting from those credits. Id. The court found the statute violated the Foreign Commerce Clause, stating:
[T]his court looks beyond the language of the subtraction modification (which does correct the unequal treatment of foreign source dividends caused by the federal tax code) to the Respondent’s scheme of taxation as pertaining to net operating losses. That scheme treats two taxpayers (one receiving domestic source dividends and the other foreign source dividends) in identical situations (in the years following a loss year), differently. In every year following the loss year, a corporation will always get the benefit of the federal deduction for domestic source dividends received in the . loss year while the Maryland subtraction modification for foreign source dividends received in the loss year will be lost. The benefit inuring to the domestic dividend recipient and the harm to the foreign dividend recipient is not speculative or uncertain. This disparate treatment discriminates against foreign commerce because it directly results in a higher Maryland corporation income tax on the taxpayer with the foreign source dividend income. By exposing foreign commerce to burdens that domestic commerce is not required to bear, the *1222 taxing scheme fails to meet Commerce Clause requirements and is invalid.
Id. (emphasis added). In so holding, the Maryland Tax Court does not appear to have considered the existence of a choice for the corporation to deduct its foreign taxes and possibly its foreign dividends in a manner similar to the domestic dividend deduction at the federal level.
As such, we find that the Maryland case is unpersuasive because of its failure to consider the argument raised here and find General Electric Co., Inc. v. Commissioner, New Hampshire Department of Revenue Administration, 154 N.H. 457, 914 A.2d 246 (2006), cert. denied, - U.S. -, 128 S.Ct. 529, 169 L.Ed.2d 337 (2007), more persuasive authority.
Specifically, in General Electric, the parent corporation filed for a refund of business profits tax (BPT) with appellee, alleging that the BPT statute was unconstitutional because it did not allow a corporation to deduct profits it or its domestic subsidiaries received from foreign subsidiaries not doing business in New Hampshire when computing BPT. Id. at 248-49. In considering appellee’s focus on the disparate treatment of dividends in regard to disparate treatment of subsidiaries, the court noted:
Distinguishing its taxing system from that in Kraft, the Kansas Supreme Court upheld the state’s combined reporting tax formula which permitted instate corporations to deduct dividends received from domestic subsidiaries, but included dividends received from foreign subsidiaries in the calculation of taxable income. [Appeal of Morton] Thiokol, [Inc., 254 Kan. 23] 864 P.2d [1175] at 1185 [ (1993) ]. The court essentially held that this formula effectively “balanced] the [tax] burdens” of each entity and accepted the state’s argument that
the aggregate tax imposed by [the state] on a unitary business with a domestic subsidiary would not be less burdensome than that imposed by [the state] on a unitary business with a foreign subsidiary because the income of the domestic subsidiary would be ... taxed while only the dividend of the foreign subsidiary would be taxed. Id. at 1186.
Similarly, in Du Pont, the Maine Supreme Judicial Court followed the reasoning of Thiokol and upheld an analogous taxing formula. [E.I.] Du Pont [de Nemours & Co. v. State Tax Assessor], 675 A.2d [82] at 83 [ (Me.1996) ]. The court found that by proportionately taxing the income received from domestic subsidiaries and the dividends received from foreign subsidiaries, the state’s taxing system “provided] a type of ‘taxing symmetry.’ ” Id. at 88. The court further held that “the inclusion of dividends paid by foreign subsidiaries does not constitute ... facial discrimination against foreign commerce.” Id.
The Thiokol and Du Pont courts looked at the overall tax burden placed upon the unitary business to determine whether the general taxing formula discriminated against foreign commerce. Thiokol, 864 P.2d at 1186; Du Pont, 675 A.2d at 88. Several other courts have upheld the principles outlined in Thiokol and Du Pont, although some have invalidated taxing regimes as discriminatory for other reasons not applicable here. See Hutchinson Technology v. Comm’r of Revenue, 698 N.W.2d 1, 17 (Minn.2005) (“But in contrast to the circumstances in Morton Thiokol and Du Pont, which involved taxes imposed by the same state for which the dividend-received deduction was intended to compensate, the additional tax liability for *1223 which the dividend-received deduction would compensate here is federal tax liability”); Emerson Elec. Co. v. Tracy, 90 Ohio St.3d 157, 735 N.E.2d 445, 448-49 (2000) (recognizing the validity of the “taxing symmetry” principle where domestic and foreign subsidiaries are both taxed once); Conoco, Inc. v. Taxation & Revenue Dep’t, 122 N.M. 736, 931 P.2d 730, 735 (1996) (same), cert. denied, 521 U.S. 1112, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997); Bernard Egan & Co. v. State, Dep’t of Rev., 769 So.2d 1060, 1061 (Fla.Dist.Ct.App.2000) (upholding similar taxing regime as constitutional because domestic and foreign subsidiary income was equally treated under the consolidated reporting method), cert. denied, 534 U.S. 995, 122 S.Ct. 464, 151 L.Ed.2d 381 (2001); Caterpillar, Inc. v. C.I.R., 568 N.W.2d 695, 701 (Minn.1997) (adopting similar analysis as applied to foreign interest and royalty payments), cert. denied, 522 U.S. 1112, 118 S.Ct. 1043, 140 L.Ed.2d 108 (1998); Fujitsu IT Holdings v. Franchise Tax Bd., 120 Cal.App.4th 459, 15 Cal.Rptr.3d 473, 489-90 (2004) (adopting the “taxing symmetry” prinéiple in Du Pont, and upholding a taxing regime which taxed foreign dividend income but excluded dividend income from domestic subsidiaries).
While we recognize that GE does not challenge the state’s combined reporting method but rather focuses only upon the alleged disparate treatment between foreign subsidiaries doing business in the state and those that do not, we find the principles of “aggregate tax” burdens and “taxing symmetry” enumerated in these cases helpful to the analysis here. The United States Supreme Court requires analysis of the aggregate tax burden when reviewing a claim that a tax discriminates in violation of the Commerce Clause: “a proper analysis must take the whole scheme of taxation into account.” Halliburton Oil Well Cementing Co. v. Reily, 373 U.S. 64, 69, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963) (quotation and citation omitted); Kraft, 505 U.S. at 80-81 & n. 23, 112 S.Ct. 2365, 120 L.Ed.2d 59 (speaking in terms of the “aggregate tax imposed by [a state] on a unitary business”).
Following the reasoning in these cases, we assess New Hampshire’s taxing regime as a whole and look at the aggregate tax imposed upon a unitary business. “A state tax must be assessed in light of its actual effect considered in conjunction with other provisions of the State’s tax scheme.” Maryland v. Louisiana, 451 U.S. 725, 756, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981).
Id. at 256-57 (emphasis added).
In General Electric, the court, looking at the “whole taxation scheme” and the “actual effect” of all provisions of the statute, upheld the statute finding that foreign and domestic subsidiaries were treated in a similar fashion, even if by differing means. Id. at 257-58. In the instant case, the parties concede that the Florida statute treats the foreign dividend tax credit and the domestic dividend deduction differently. However, because Florida (1) subtracts all foreign source dividends from its income calculation and (2) offers carryover of the foreign tax deduction (a deduction based on essentially the same principles as the foreign tax credit), the entire statute, when read together, does not treat foreign and domestic subsidiaries disparately. Even where Florida excludes all foreign source dividends, a corporation can still deduct and carry over any net operating losses resulting from taxes paid by foreign and domestic subsidiaries, regardless of whether those taxes are assessed using dividends versus actual taxes paid.
*1224 The federal government has chosen to treat the offset of domestic and foreign tax dissimilarly by offering only one option for the offset of domestic taxes paid (the domestic dividend deduction) and offering two options for the offset of foreign taxes paid (the foreign tax deduction and the foreign tax credit). Florida “piggybacks” the federal carryover allowance in all respects, except that it chooses to limit a corporation’s ability to carry over the foreign tax credit to offset taxes owed to Florida based on wholly domestic business. Also, unlike the federal government, Florida declines to include any foreign source dividends in its income calculation. Accordingly, Florida goes “above and beyond” the federal government’s treatment of foreign dividends by offering corporations (1) the subtraction of all foreign source dividends from its income calculation and (2) the ability to offset taxes owed to Florida through to the use of the foreign tax credit. No disparate treatment of the dividends can exist where Florida does not include foreign source dividends in its income calculation, but offers a corporation the ability to carry over net operating losses resulting from the deduction of foreign taxes paid and the possible deduction of other significant foreign dividends based on those same excluded foreign source dividends.
AFFIRMED.
THOMAS, J. and PLEUS, ROBERT J., JR., Associate Judge, concur.

. During the period of audit, 78% of appellant’s product sales were generated outside the United States.

. This provision applies to corporations opting to take the foreign tax credit. When a *1215 corporation opts to take the foreign tax credit, the amount of that credit must be added to the corporation’s income calculation pursuant to section 78 of the I.R.C., in order to represent pre-taxable dollars. Florida subtracts these "gross-up” dividends from its income calculation with all other foreign-source income.

. The Department relies heavily on the holding in Heftier Construction, 438 So.2d at 141, which considered a challenge to section 220.13(l)(b)’s prohibition of foreign source subtraction carryovers and stated in pertinent part:
Section 220.13(l)(b)2.b., Florida Statutes (1975), provides that income derived from sales outside the United States or from sources outside the United States on interest, royalties or compensation for services shall be subtracted from taxable income. Section 220.13(l)(b)l.c., Florida Statutes (1975), provides that net operating losses shall be deemed net operating loss carryovers “and treated in the same manner, to the same extent, and for the same time periods as are prescribed for such carryovers in” section 172 of the Internal Revenue Code (1975). The Code does not expressly provide for the carryover of net operating "losses” resulting from the subtraction of foreign source income. The Code only provides for net operating loss carryovers to the extent they are provided for in section 172 of the Internal Revenue Code.
For federal income tax purposes "net operating loss” is defined as the excess of deductions allowed by the Internal Revenue Code over gross income. I.R.C. § 172(c). Deductions allowed by the Internal Revenue Code do not include the deduction of foreign source income. It follows, therefore, that allowing for the carryover of net operating losses to the extent provided for in section 172 of the Internal Revenue Code would preclude for Florida tax purposes the carryover of a net operating "loss” result *1217 ing from the subtraction of foreign source income.
The Department asserts this court must uphold section 220.13(l)(b)l. as constitutional because the holding of Heftier Construction was not overrruled by the United States Supreme Court's holding in Kraft. However, this argument fails to consider the underlying argument in Heftier Construction. In Heftier Construction, 438 So.2d at 140, the Supreme Court was not asked to consider whether section 220.13(l)(b)l. violated the Foreign Commerce Clause by unlawfully discriminating between foreign and domestic dividend credits; the court was merely asked to determine whether section 220.13(l)(b)l. expressly prohibited a company from using its foreign source income subtraction net loss carry over in its determination of taxes owed to Florida. Thus, the holding of Heftier Construction has no precedential value here and can do little to guide this court's decision.

. Because appellant is raising a facial challenge, it does not assert what percentage domestic deduction it was qualified to take.

. Again, because it is raising a facial challenge, appellant does not provide information regarding its qualifying status in regards to this particular deduction.